**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

MANJINDER S., et al.,

Petitioners,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

No. 1:26-cv-02548 JLT EGC (HC)

A-Numbers: 075-185-386; 075-185-387

ORDER ADOPTING FINDINGS AND RECOMMENDATIONS IN PART, GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONERS, AND DIRECTING CLERK OF COURT TO CLOSE CASE

(Docs. 1, 12)

Manjinder S. and Dalvinder S. are immigration detainees proceeding with a joint petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Petitioners are brothers who came to the United States from the Philippines in 1992 when they were young children on their father's visa. (*See id.*, ¶ 7.) They obtained legal permanent resident status as beneficiary children but later lost that status after they were placed in removal proceedings alongside their father in a consolidated case that resulted in a final order of removal against the entire family. (*Id.*) In 2017, the Ninth Circuit denied the family's direct challenges to their orders of removal. *See Singh v. Sessions*, 696 F. App'x 300, 301 (9th Cir. 2017). Since that time, both Petitioners married U.S. Citizens, began to build families, maintained gainful employment, and have pursued various pathways to legalize their status in the United States, though none have yet been successful. (Doc.

1 at 9–12.) Neither brother has any extant criminal record.[1] (*See id.*)

Both Petitioners are seeking to adjust their status to that of a permanent resident through marriage to a U.S. Citizen spouse. (Doc. 1, ¶ 2.) On or around September 30, 2025, Petitioners each received a Form I-130 "Biometrics Notice" to have the government take their fingerprints—a required step of the marriage-based adjustment application process. (*Id.*, ¶ 3.) On October 2, 2025, Petitioners, along with their spouses, arrived at the U.S. Department of Homeland Security office in San Jose, California for their I-130 Biometrics Appointment. (*Id.*, ¶ 5.) Manjinder brought his wife and then 10-month-old son; Dalvinder's wife, who was 8 months pregnant at the time, was also in attendance. (*Id.*) As soon as the families entered the waiting room, Petitioners were separated from their spouses, who were told to wait outside. (*Id.*) DHS officers then detained and arrested Petitioners. (*Id.*) Before their detention in October 2025, it does not appear that DHS ever took or attempted to take Petitioners into custody, nor were they placed under any form of order of supervision.

About a month after they were arrested, on October 22, 2025, Petitioners moved to reopen their removal proceedings.[2] The Board of Immigration Appeals granted the stay, pending adjudication of their motions to reopen, which still await adjudication. (*See* Doc. 1, ¶ 14.)[3]

Petitioners initiated this habeas action on April 2, 2026, challenging their ongoing immigration detention. (Doc. 1.) Along with the Court denying as untimely Petitioners' requests for emergency injunctive relief, it referred the matter to the assigned magistrate judge. (Doc. 6.) On August 5, 2026, the magistrate judge issued findings and recommendations that the Petition be granted and Respondents be directed to immediately release Petitioners. (Doc. 12 (recommending adoption of the reasoning set forth in *Franco v. Meyer*, No. 1:25-cv-01620-DAD-

[1] Dalvinder incurred a petty theft conviction when he was 18 but alleges that conviction was expunged. (Doc. 1, ¶ 64.) Respondents do not suggest otherwise.

[2] The Court takes judicial notice of this information, gathered from the EOIR Automated Case Information Website (https://acis.eoir.justice.gov/en/) using Dalvinder's A-File number and nationality.

[3] Petitioners indicate that on January 21, 2026, ICE denied their requests for a custody review on the basis that they had "filed a stay of removal therefore [they] do not get a 90-day custody review." (Doc. 1, ¶ 70.) On April 1, 2026, Petitioners submitted a 180-day custody review, contending their detention has become prolonged. (*Id.*) The record does not indicate whether that review has taken place.

CKD (HC), 2025 WL 3280782 (E.D. Cal. Nov. 25, 2025) (holding arrest at an adjustment of status appointment violated the INA)). On August 8, 2026, Respondents filed timely objections, (Doc. 13), to which Petitioners responded. (Doc. 14.)

According to 28 U.S.C. § 636(b)(1)(C), the Court has conducted a *de novo* review of the case. Having carefully reviewed the entire file, the Court agrees that habeas relief in the form of immediate release is warranted but reaches that outcome for different reasons than presented in the recommendations and will order that Petitioners be released subject to orders of supervision.

Among the numerous grounds for relief raised, Petitioners contend that their detention violates 8 U.S.C § 1231(a) because they have been detained beyond the 90-day removal period. (*See* Doc. 1, ¶¶ 105–109.) Respondents rejoin that "both Petitioners are subject to mandatory detention" under § 1231(a) "while their removal is stayed." (Doc. 8 at 2.) Though Respondents do not make their exact theory of detention entirely clear, the Court presumes that because Respondents utilize the term "mandatory" in relation to § 1231 detention and also reference the BIA's stay, they are invoking one of two possible theories: (a) that the removal period has not yet begun to run because of § 1231(a)(1)(B); and/or (b) that the removal period has been extended under § 1231(a)(1)(C). Neither theory has merit.

First, in general, "[e]xcept as otherwise provided in [§ 1231], when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days ([ ] referred to as the "removal period")." 8 U.S.C. § 1231(a)(1)(A). "Under § 1231(a)(1)(B), the 90-day removal period begins on the latest of the following: (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."

Some kinds of stays prevent the removal clock from beginning under § 1231(a)(1)(B). For example, when the order of removal has been directly challenged by way of a petition for review and the relevant court of appeals has issued a stay pending its review of that direct challenge, the noncitizen "may not be detained under any subsection of § 1231(a) unless and until the court

finally denies the alien's petition for review. *See* § 1231(a)(1)(B)(ii)." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1060 (9th Cir. 2008). However, "[t]he beginning of the removal period is not delayed by *every* judicially entered stay, because the exclusive means for judicial review of a removal order is a petition for review filed with the appropriate court of appeals." *Id*. (citing §§ 1231(a)(1)(B)(ii), 1252(a)(5)). "Therefore, the entry of a stay of removal for any other reason—for example, a stay entered while a court reviews an alien's § 2241 habeas petition or petition for review of the BIA's denial of a motion to reopen—does not prevent the removal period from beginning." *Id*. at 1060 n. 6. The present case falls within the latter category, because the operative stay concerns a motion to reopen, not a direct challenge to the removal order itself.[4] Respondents appear to be trying to turn this distinction upside down by arguing that the BIA's emergency stay, imposed in 2025, operates like a stay imposed during the direct appeal process. The Court can identify no authority that supports such a position, and Respondents have cited none. Thus, the Court concludes that the 90-day period began to run long ago when their order of removal became administratively final in 2015, *see* § 1241(a)(1)(B)(i); (Doc. 10, Ex. 1 (Board of Immigration Appeals Decision on Appeal of Removal Order, dated August 25, 2015)), and expired 90 days later.

Though it is not clearly articulated, Respondents also may be suggesting § 1231(a)(1)(C) render's Petitioners' detention "mandatory." (*See* Doc. 1, ¶ 33 (Petition alleging that "[o]n January 19, 2026, Petitioners requested a 90-day custody review following the BIA's order staying execution of their removal orders. ICE refused to grant custody review on the baseless grounds that Petitioners sought a stay of removal from the BIA; Doc. 8 at 2 ("[B]oth Petitioners are subject to mandatory detention while their removal is stayed.").) Section § 1231(a)(1)(C) provides in full:

> **Suspension of period**
>
> The removal period shall be extended[5] beyond a period of 90 days

---

[4] It is of no moment that *Prieto-Romero*'s footnote discusses the example of a stay imposed by the Ninth Circuit after the BIA denied a motion to reopen, whereas here the BIA itself imposed the emergency stay while it considers the motion to reopen.

[5] The statute's use of the term "extended" suggest that this provision is meant only to extend a removal

> and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

At least one district court in this circuit has applied this provision to a petitioner who filed repeated requests for review with the BIA. *Bonilla-Montano v. Holder*, No. CV 07-1469-JSL (PLA), 2010 WL 1727803, at *4 (C.D. Cal. Mar. 25, 2010*), report and recommendation adopted*, No. CV 07-1469-JSL (PLA), 2010 WL 1727808 (C.D. Cal. Apr. 26, 2010) (citing *Roach v. Holder*, 344 Fed. Appx. 945, 2009 WL 2998906 at *1 (5th Cir. 2009).) But to the extent a petitioner uses available legal remedies in good faith, the Ninth Circuit has indicated § 1231(a)(1)(C) does not "extend" the removal period:

> [W]are highly skeptical about the government's suggestion that an alien's attempt to seek judicial relief from deportation constitutes "conspir[ing] or act[ing] to prevent [his] removal." *See* § 1231(a)(1)(C). We have previously held that an alien engages in such behavior when he willfully refuses to cooperate with the government in processing his deportation papers. *See Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003) (alien refused to "cooperate fully and honestly with officials to secure travel documents"); *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003) (alien refused to fill out passport application). Such acts of obstruction are clearly of a different nature than an alien's attempt to make use of legally available judicial review and remedies.

*Prieto-Romero*, 534 F.3d at 1060–61; *see also Diouf v. Mukasey*, 542 F.3d 1222, 1232 (9th Cir. 2008) ("As we explained in *Prieto–Romero*, § 1231(a)(1)(C) pertains only to intentionally obstructionist, bad faith tactics that are designed to frustrate the government's attempts to effectuate a removal order, not to an alien's good faith attempt to make use of legally available judicial review and remedies."). Though Respondents may disagree with Petitioners on the merits, there is no suggestion that their petition to reopen and related request for a stay (which is discretionary and was granted) was made in bad faith. Thus, § 1231(a)(1)(C) is inapplicable on this record.

Thus, Respondents have failed to articulate a basis for "mandatory" § 1231 detention. Crucially, their briefs do not alternatively argue that Petitioners are being detained at DHS

---

period that is still running. Thus, given that the Court has found above that the 90-day removal period has already run its course, it is debatable whether § 1231(a)(1)(C) can come into play at all.

discretion under § 1231(a)(6), so the Court declines to evaluate how that provision might apply under the present circumstances, where Petitioners were never before detained nor subjected to an order of supervision.[6] Instead, because Petitioners' final orders of removal "became final long ago," and there is no record evidence to suggest that the period has been extended or reset, the 90-day removal period has expired and Petitioners are subject to supervision under § 1231(a)(3). *See Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025).

In sum, because Respondents have not articulated a valid basis for detention and nothing in the record even remotely suggests Petitioners, who are married to U.S. Citizens and have young children, are a danger to the community or present a flight risk, the Court will order their immediate release. However, because 8 U.S.C. § 1231(a)(3)[7] appears to require that Petitioners be subject to an order of supervision, the Court will permit Respondents to impose supervision upon them in accordance with the law. Given this outcome, the Court finds it unnecessary to address the remaining claims in the case and will not impose any other requested forms of relief. Thus, the Court **ORDERS**:

1. The findings and recommendations issued on August 5, 2026 (Doc. 12) are **ADOPTED IN PART.**
2. The petition for writ of habeas corpus is **GRANTED**.
3. Respondents **SHALL IMMEDIATELY RELEASE** Petitioners from custody subject to orders of supervision issued in accordance with 8 U.S.C. § 1231(a)(3).[8]
4. The Clerk of Court is directed to transmit a copy of this order to the Mesa Verde

---

[6] The findings and recommendations indicate that there is evidence Petitioners were previously "released." (Doc. 12 at 2.) The Court interprets this as a reference to the fact that Petitioners were issued orders of removal in 2013, but Respondents took no steps to detain Petitioners at that time or place them on any kind of order of supervision. (Doc. 1, ¶ 8.)

[7] 8 U.S.C. § 1231(a)(3) provides: "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."

[8] Because revocation of an order of supervision is subject to detailed regulatory procedures, the Court finds it unnecessary on this record to provide additional relief against re-detention.

Detention Facility and to **CLOSE THE CASE**.

IT IS SO ORDERED.

Dated: _August 16, 2026_

UNITED STATES DISTRICT JUDGE